# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SHEILA T. MULLIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:11CV22 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| **Acting Commissioner of Social** | ) | |
| **Security,** | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Sheila T. Mullis, brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g)), to obtain review of a final decision of the Commissioner of Social Security affirming the cessation of her Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Act.[1] The Court has before it the certified administrative record and cross-motions for judgment.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Plaintiff filed an application for a POD and DIB on May 21, 2002 alleging a disability onset date of November 10, 2001. (Tr. 90-92.) On June 18, 2002, Plaintiff was found to be disabled under the Act as of November 10, 2001 (*Id.* at 21, 34.) On October 2, 2007, Defendant concluded that Plaintiff's disability ceased as of December 2006. (*Id.* at 61-72.) On November 14, 2007, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 76.)[2] At the July 8, 2008 hearing were Plaintiff, her attorney, and a vocational expert ("VE"). (*Id.* at 420, 422.) In his November 25, 2008 decision, the ALJ determined that Plaintiff was no longer disabled under the Act as of December 1, 2006. (*Id.* at 21-33.) On November 17, 2010, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (*Id.* at 5-8.)

# II. FACTUAL BACKGROUND

Plaintiff was forty-nine years old as of December 1, 2006, had at least a high school education, and is able to communicate in English. (*Id.* at 31.)

# III. STANDARD FOR REVIEW

The Act provides that, for "eligible"[3] individuals, benefits shall be available to those who are "under a disability," defined in the Act as the inability:

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

---

[2] Transcript citations refer to the administrative record.
[3] Eligibility requirements for DIB are found at 42 U.S.C. § 423(a)(1).

42 U.S.C. § 423(d)(1)(A).

Once the decision has been made to grant a claimant benefits, there is no presumption of continuing disability, *see id.* § 423(f)(4); rather, that decision is subject to periodic review. *See* 20 C.F.R. § 404.1589. The prior determination—the "comparison point decision"—is used as a reference to evaluate whether any medical improvement has been realized relating to the individual's ability to work. 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594.

The Commissioner defines "medical improvement" as:

> any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)[.]

20 C.F.R. § 404.1594(b)(1).

In turn, the medical improvements that are relevant to a disability determination must be those that increase an individual's functional capacity to engage in gainful activity, *i.e.*, the ability to do basic work. 20 C.F.R. § 404.1594(b)(3), (4). To make this determination, the Commissioner employs an eight-step sequential analysis:

(1) Is the beneficiary working?

(2) If not, does the impairment meet or equal a listing?

(3) If not, has there been "any" medical improvement?

(4) If medical improvement, does such improvement relate to the ability to work?

(5) If no improvement, does an exception[4] apply?

(6) If there is an improvement related to work ability, are the current impairments, alone or in combination, "severe"?

(7) If there is a severe impairment, does the beneficiary's residual functional capacity ("RFC") permit performance of past work?

(8) If not, does the beneficiary have the RFC to perform other work? 20 C.F.R. § 404.1594(f)(1)-(8). If the Commissioner finds conclusively that a claimant is disabled at any point in this process, review does not proceed to the next step. *See id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Consequently, the Act precludes a de novo review of the evidence and requires the Court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Substantial evidence is:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

---

[4] None of the "exceptions" listed in subsections (d) and (e) of the regulation are applicable hereto.

*Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966)). Thus, it is the duty of this Court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that this conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## IV. THE ALJ'S DISCUSSION

In deciding that Plaintiff is no longer entitled to benefits, the ALJ made the following findings, which have been adopted by the Commissioner:

(1) The most recent favorable medical decision finding that the claimant was disabled is the decision dated June 18, 2002. This is known as the "comparison point decision" or CPD.

(2) At the time of the CPD, the claimant had the following medically determinable impairments: breast cancer. These impairments were found to meet section(s) 13.09B of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)).

(3) Through December 1, 2006, the date the claimant's disability ended, the claimant did not engage in substantial gainful activity (20 CFR 404.1594(f)(1)).

(4) The medical evidence establishes that, as of December 1, 2006, the claimant had the following medically determinable impairments: disorders of the back, neuropathy of the feet, stomach problems and mood and anxiety disorders.

(5) Since December 1, 2006, the claimant did not have an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

(6) Medical improvement occurred as of December 1, 2006 (20 CFR 404.1594(b)(1)).

(7) The medical improvement is related to the ability to work because, as of December 1, 2006, the claimant's CPD impairment(s) no longer met or medically equaled the same listing(s) that was met at the time of the CPD (20 CFR 404.1594(c)(3)(i)).

(8) As of December 1, 2006, the claimant continued to have a severe impairment or combination of impairments (20 CFR 404.1594(f)(6)).

(9) Based on the impairments present as of December 1, 2006, the claimant had the residual functional capacity to perform a range of unskilled light work. However, the claimant is precluded from concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. In addition, the claimant has non-exertional limitations, which limits her to simple, routine, repetitive tasks at a low production pace and low stress environment.

(10) As of December 1, 2006, the claimant was unable to perform past relevant work (20 CFR 404.1565).

(11) On December 1, 2006, the claimant was a younger individual age 18-49 (20 CFR 404.1563).

(12) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

(13) Beginning on December 1, 2006, transferability of job skills is not material to the determination of disability because using Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(14) As of December 1, 2006, considering the claimant's age, education, work experience, and residual functional capacity based on the impairments present as of

December 1, 2006, the claimant was able to perform a
significant number of jobs in the national economy (20
CFR 404.1560(c) and 404.1566).

(15)    The claimant's disability ended as of December 1, 2006
(20 CFR 404.1594(f)(8)).

(Tr. 22-32.)

## V. ANALYSIS

Plaintiff raises four issues. First, Plaintiff argues that the ALJ failed to properly

evaluate her credibility. (Docket Entry 9 at 9-14.) Second, Plaintiff contends the ALJ

committed reversible error by failing to properly apply the "medical improvement" standard.

(*Id.* at 7-8.) Third, Plaintiff asserts that the ALJ failed to follow the eight-step medical

improvement standard applicable in termination cases. (*Id.* at 8-9.) Fourth, Plaintiff

contends that the ALJ erred by failing to reconcile a conflict between the Dictionary of

Occupational Titles ("DOT") and VE testimony. (*Id.* at 2-6.) As explained below, Plaintiff's

final argument has merit and the undersigned consequently recommends remand.

### A. The ALJ's Credibility Determination and RFC Determination Are Supported by Substantial Evidence.

Plaintiff contends that the ALJ's credibility analysis is in error and in so doing also

takes issue with the ALJ's RFC determination. (*Id.* at 9-14.) The Fourth Circuit Court of

Appeals has adopted a two-step process by which the ALJ must evaluate a claimant's

symptoms. First, the ALJ must determine if the plaintiff's medically documented

impairments could reasonably be expected to cause plaintiff's alleged symptoms. *Craig*, 76

F.3d at 594. The second step includes an evaluation of subjective evidence, considering

claimant's "statements about the intensity, persistence, and limiting effects of [claimant's] symptoms." *Id.* at 595 (citing 20 C.F.R. §§ 416.929(c)(4) and 404.1529(c)(4).) "The ALJ must consider the following: (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment." *Grubby v. Astrue*, No. 1:09CV364, 2010 WL 5553677, at *3 (W.D.N.C. Nov. 18, 2010) (unpublished) (citing *Craig*, 76 F.3d at 595; 20 C.F.R. § 404.1529(c)).) "Other evidence" refers to factors such as claimant's daily activities, duration and frequency of pain, treatment other than medication received for relief of symptoms, and any other measures used to relieve claimant's alleged pain. *Id.* SSR 96-7p, *Assessing the Credibility of an Individual's Statements*, also instructs the ALJ to "consider the entire case record" and requires a credibility determination to "contain specific reasons for the finding on credibility, supported by the evidence in the case record[.]" SSR 96-7p. An ALJ's credibility determination receives "substantial deference." *Sayre v. Chater*, No. 95-3080, 1997 WL 232305, at *1 (4th Cir. May 8, 1997) (unpublished).

Here, the ALJ completed both steps of the *Craig* analysis. The ALJ initially considered the evidence of record and concluded that "the claimant's medically determinable impairments could have reasonably been expected to produce the alleged symptoms." (Tr. 29.) Then, the ALJ went on to perform the next step of the *Craig* analysis, concluding further that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the

residual functional capacity assessment for the reasons explained below." (*Id.*) The ALJ proceeded to partially discount Plaintiff's credibility as follows. First, the ALJ reasoned that despite discomfort Plaintiff had "greater exertional abilities than she admits to" because she can "move about and use her arms and legs in a satisfactory manner." (*Id.*) The ALJ supported this conclusion by pointing to (1) a lack of complaints regarding self-care, (2) Plaintiff's statement to a medical consultant that she "ran errands with her father" and that she "kept up with her self-care and did not let it go," (3) Plaintiff's testimony that she performed household chores until she tired, and (4) Plaintiff's February 19, 2007 statement to a treating physician that she was doing fairly well and voicing no concerns or complaints. (*Id.* at 30.)

Second, the ALJ addressed Plaintiff's testimony regarding neuropathy of the feet, noting that "there is very minimal objective evidence subsequent to December 1, 2006 in regards to this allegation." (*Id.*) He also noted (1) that the medical evidence "suggests that once the claimant's medications [during chemotherapy] were adjusted, that there were no further complaints of neuropathy," (2) that it was noted by a physician in August 11, 2007 "that the claimant looked well" and "[t]here was no lower extremity edema," (3) that claimant tolerated Arimidex well, and (4) that there was no objective medical evidence substantiating Plaintiff's allegation that after standing for fifteen to twenty minutes her feet began to hurt. (*Id.*)

Third, as to Plaintiff's allegations of back pain, the ALJ noted that MRI's of her thoracic and lumbar spine revealed no acute compression fracture, though there were mild

thoracic disc bulges, a small protrusion at T10-11, and a small left lateral herniation at T5-6 with minimal effacement of the thoracic cord. (*Id.*) Fourth, in addressing Plaintiff's complaints of chest pain, the ALJ noted that July 13, 2007 chest x-rays revealed no significant interval changes, surgical clips in the left axilla and a left breast implant in place, an apparently intact bony thorax, clear lungs, and no active chest disease or evidence of metatastic disease. (*Id.* at 29-30.) Fifth, as to Plaintiff's stomach problems, the ALJ pointed to a September 11, 2007 evaluation by a physician noting that her CT scan and upper and lower endoscopies were completely negative, no ulcer was seen, but that Plaintiff was under stress from a family situation. (*Id.* at 30.)

Sixth, the ALJ concluded that Plaintiff's depression and anxiety were the source of some limitation, but that nevertheless, Plaintiff was capable of taking care of her own personal needs and that she could think, communicate, act in her own interest, and get along with others. (*Id.*) The ALJ noted that despite a diagnosis of both depression and anxiety by her primary care physician, Plaintiff received very little mental health treatment. (*Id.*) Although Plaintiff sought limited mental health support from her doctor, Erin K. Taylor, Ph.D., and while Dr. Taylor provided a statement regarding Plaintiff's depression, the ALJ noted that Dr. Taylor did not provide any specific limitations due to mental impairment. (*Id.*)

The ALJ further noted that one of Plaintiff's primary care physicians, Dr. Wheless, diagnosed her with anxiety and prescribed various medications, which Plaintiff reported improved her symptoms on March 1, 2007. (*Id.*) Another physician who treated Plaintiff noted on September 11, 2007, that Plaintiff was under a great deal of stress from a family

situation, which was a great part of Plaintiff's problem. (*Id.*) Plaintiff admitted that she had significant problems involving her husband and son, but these problems resolved, and at the hearing Plaintiff testified that the resolution occured prior to her seeking mental health treatment. (*Id.*) The ALJ thus concluded that when Plaintiff is compliant with treatment it was beneficial to her overall mental health and well-being and that she was precluded from high stress work, work involving complex or detailed tasks found in skilled work, but not from performing unskilled work involving simple, routine and repetitive tasks. (*Id.*)

Finally, the ALJ noted that Dr. Taylor provided a statement on October 24, 2007 indicating that Plaintiff's quality of life had been adversely affected by her physical ailments and that she had to cease many instrumental activities of daily living. (*Id.* at 31.) However, the ALJ noted further that no treating or examining physician offered any opinion that after December 1, 2006 Plaintiff was unable to work. (*Id.* at 31.) Consequently, the ALJ attributed substantial weight to the findings of the state agency medical consultants who concluded that Plaintiff could perform a range of light work with environmental limitations and to a state agency psychologist that concluded that Plaintiff had moderate restrictions in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation. (*Id.*)

The ALJ conclude this analysis by noting that he had evaluated Plaintiff's allegations in the light most favorable to her, but concluded that "[i]n light of the inconsistencies noted above, together with the totality of the medical evidence, [he] [did] not find persuasive the

claimant's allegations of inability to perform any work subsequent to December 1, 2006."
(*Id.*) Consequently, the ALJ limited Plaintiff to the performance of unskilled, light work, but precluded her from concentrated exposure to fumes, odors, dusts, gasses, and poor ventilation. (*Id.* at 28.) Plaintiff was likewise limited to simple, routine, repetitive tasks, at a low production pace, and low stress environment. (*Id.*)

Having reviewed both the briefs of the parties and the entire record, the undersigned concludes that the ALJ's credibility analysis and the RFC are supported by substantial evidence. Plaintiff's arguments to the contrary are not persuasive. Plaintiff contends that the ALJ failed to state specific reasons for his credibility determination and failed further to consider Plaintiff's allegations of pain. (Docket Entry 9 at 9-14.) This is simply not true, as should be evident in light of the ALJ's lengthy credibility determination described above. As explained above, and demonstrated in greater detail below, the ALJ permissibly considered factors such as Plaintiff's reported daily activities of self-care, running errands with her father, performing household tasks, reports to her consultative and treating physicians of greater capability and fewer complaints than she stated in support of her disability claim, the absence of contemporaneous medical records substantiating her complaints of limited standing capabilities, her minimal mental health treatment record, and the beneficial effects of prescribed medications.

Moreover, it is significant that the record is barren of a relevant opinion that Plaintiff is permanently disabled after December 1, 2006, or treatment records indicating restrictions more significant than those set forth in the RFC. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th

Cir. 1999) (holding that a lack of physical restrictions from a treating source tends against a finding of total disability); *Hilton-Williams v. Barnhart*, Civ. A. No. 7:05cv00674, 2006 WL 3099648, *3 (W.D.Va. Oct. 24, 2006) (unpublished) (finding that a mere diagnosis absent any evidence of actual functional limitations was insufficient to establish disability). Additionally, evidence from non-examining physicians—such as the state agency consultants in this case—can constitute substantial evidence to support a finding of non-disability to the extent they are consistent with the record. *See, e.g., Smith v. Schweicker*, 795 F.2d 343, 345-346 (4th Cir. 1986); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984).

Plaintiff does contend, however, that there are critical flaws in the ALJ's assessment of Plaintiff's neuropathy in her feet, back pain, chest pain, abdominal pain, and anxiety and depression. (Docket Entry 9 at 10-12.) The undersigned does not agree. The ALJ did not err in partially discounting Plaintiff's complaints of chest and abdominal pain, because as Defendant correctly points out, the record documents her treating sources' inability to identify causative impairments responsible for these pains. (Docket Entry 12 at 17-18 citing Tr. 211, 221, 238, 257, 269-70, 271, 275, 287, 289, 291, 293, 376.) *See* 20 C.F.R. 404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged"). Regarding Plaintiff's neuropathy of the feet, the ALJ did not find "no evidence" of foot neuropathy, as Plaintiff contends (Docket Entry 9 at 10), but instead "very minimal objective evidence." (Tr. 29; *see* 398, 401.) Likewise, the ALJ acknowledge

Plaintiff's back issues. (Tr. 29; *see* 170, 202, 295.) The ALJ concluded that Plaintiff's complaints of pain as to her neuropathy and back issues were not entirely credible given the minimal amount of objective evidence present. These findings are supported by substantial evidence.

Regarding Plaintiff's mental restrictions, Plaintiff points to a note made by a state agency consultant, Dr. Steinmuller, who conducted a consultative psychological exam and concluded that Plaintiff "was able to understand, retain, and follow instructions, *but could not always adequately sustain attention to carry them to completion in a correct fashion.*" (Tr. 326) (emphasis added.) Plaintiff contends that the ALJ erred in concluding that Plaintiff could understand, retain, and follow directions, while ignoring the remainder (italicized portion) of Dr. Steinmuller's conclusion. (Docket Entry 9 at 11.) Yet, the ALJ acknowledged this very language in step two (Tr. 26-27) and Dr. Steinmuller's report was before the state agency consultant when he issued his mental RFC assessment. (*Id.* at 171-74.) Thus, Dr. Steinmuller's observation forms part of the basis of the non-exertional limitations set forth by the ALJ in Plaintiff's RFC. The ALJ's findings in this regard are well-supported.

Last, Plaintiff criticizes the ALJ's conclusion that her credibility was diminished in part because she tends to her personal needs and does things around the house "when she is up to it." (Docket Entry 9 at 12.) However, the ALJ properly considered Plaintiff's activities of daily living as one of many factors in his credibility analysis, including attending to her own personal care, running errands with her father, and performing household chores until she was tired. (Tr. 26, 29, 324-25.) The Fourth Circuit has routinely upheld negative

credibility assessment's based in part on claimants' abilities to perform such activities. *See, e.g., Mastro,* 270 F.3d at 175, 179; *Mickles v. Shalala,* 29 F.3d 918, 927 (4th Cir. 1994); *Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986). In short, the ALJ's credibility analysis and RFC are both supported by substantial evidence.

## II. The ALJ Did Not Misapply the "Medical Improvement" Standard, Nor Did He Fail to Follow the Eight-Step Medical Improvement Standard.

Plaintiff's next two arguments overlap considerably and will therefore be considered together. Plaintiff contends that "[a]lthough the medical records document [Plaintiff's] breast cancer is stable[,] the ALJ fails to identify substantial evidence of record that demonstrates a return in [her] ability to work." (Docket Entry 9 at 7-8.)[5] Plaintiff contends further that "[a]lthough the ALJ recites the . . . eight step[ ] [medical improvement standard] he fails to follow these steps in making his determination" because "the ALJ completely disregards the medical evidence of the residual effects of the cancer and its treatment." (*Id.* at 9.) Therefore, Plaintiff concludes, "there is no improvement in [Plaintiff's] ability to engage in work functions." (*Id.*) These arguments lack merit.

Specifically, at step two, the ALJ concluded that Plaintiff "did not have an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Tr. 25.) And, at step three, the ALJ concluded that medical improvement had occurred as of December 1, 2006. In support the ALJ noted that:

---

[5] The undersigned addresses separately below Plaintiff's contention that there is an apparent conflict in VE testimony with the DOT.

The medical evidence supports a finding that, as of December 1, 2006, there had been a decrease in medical severity of the impairments present at the time of the CPD. Specifically, the claimant was followed and treated by J. David Turner, M.D. of the Northeast Oncology Associates. Dr. Turner reported on August 11, 2006 that the claimant had a history of breast cancer diagnosed in 2001. The claimant was treated with a left mastectomy. She also received adjuvant chemotherapy with 4 cycles of FEC followed by 2 cycles of Taxol. Subsequently, the claimant developed neuropathy and the Taxol was discontinued. She was then placed on Tamoxifen for adjuvant endocrine therapy, which the claimant tolerated poorly. Therefore, the claimant was started on Arimidex in April 2003. Dr. Turner concluded on August 11, 2006, that the claimant's breast cancer and other comorbidities appeared to be stable with no signs of recurrent breast cancer. On February 8, 20007, the claimant underwent a unilateral right screening mammogram, which revealed no significant focal abnormality. A comparison was made with mammograms performed on February 7, 2006 and January 12, 2005. No significant changes were demonstrated. There was [a] tiny benign appearing nodular density in the retroareolar region, which was stable. Rare benign calcifications were also seen. There were no suspicious abnormalities evident. (Exhibit 5F).

In addition, bone density testing performed on September 14, 2006 revealed normal bone density and improvement in her lumbar spine bone density. (Exhibit 5F).

(Tr. 27.)

Plaintiff does not challenge the ALJ's finding at step two, that she did not meet a listing, or step three, that she has experienced medical improvement. Plaintiff, as noted, in fact concedes that the breast cancer upon which her disability benefits were based was stable. Instead, Plaintiff contests the ALJ's conclusion at the fourth step of this process, in which the ALJ concluded that the medical improvement of her breast cancer was related to

her ability to work. (Docket Entry 9 at 7-9.) Specifically, Plaintiff contends that because her breast cancer treatment left residual effects, the medical improvement she experienced has not resulted in an increased work capacity. (*Id.*)

This argument lacks merit, because—as Defendant points out—the fact that Plaintiff's breast cancer is in stable remission, and no longer meets or equals Listing 13.10, means that her medical improvement is related to her ability to work pursuant to 20 C.F.R. § 404.1594(c)(3)(i). That regulation states:

> If our most recent favorable decision was based on the fact that your impairment(s) at the time met or equaled the severity contemplated by the Listing of Impairments in appendix 1 of this subpart, an assessment of your residual functional capacity would not have been made. *If medical improvement has occurred and the severity of the prior impairment(s) no longer meets or equals the same listing section used to make our most recent favorable decision, we will find that the medical improvement was related to your ability to work.* Appendix 1 of this subpart describes impairments which, if severe enough, affect a person's ability to work. If the appendix level of severity is met or equaled, the individual is deemed, in the absence of evidence to the contrary, to be unable to engage in substantial gainful activity. *If there has been medical improvement to the degree that the requirement of the listing section is no longer met or equaled, then the medical improvement is related to your ability to work.* We must, of course, also establish that you can currently engage in gainful activity before finding that your disability has ended.

20 C.F.R. § 404.1594(c)(3)(i) (emphasis added).

In this case, the ALJ properly determined that Plaintiff no longer had an impairment or combination of impairments equal to the same listing that was met at the time of her last disability determination. Plaintiff's initial disability determination turned on her

demonstrating that she met the requirements for Medical Listing 13.09(B) (Tr. 34.)[6] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Medical Listing § 13.09(B). Thus, no assessment of Plaintiff's residual functional capacity was made at the time of her initial disability determination. *See* 20 C.F.R. § 404.1594(c)(3)(i). Because Plaintiff no longer met or equaled the same listing that she met when she was previously found disabled, substantial evidence necessarily supports the ALJ's finding that her medical improvement was related to her ability to do work. *See id.*[7] Remand is not warranted on this issue.

## IV. The ALJ Erred in Concluding That Plaintiff Can Perform Other Work Existing in Substantial Numbers in the National Economy and Remand Is Required.

In his decision, the ALJ concluded that Plaintiff had the following medically determinable impairments: disorders of the back, neuropathy of the feet, stomach problems,

---

[6] As Defendant correctly points out, Listing 13.09B denotes disabling malignant neoplastic disease of the thyroid gland, involving carcinoma with metastases beyond the regional lymph nodes despite radioactive iodine therapy. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 §13.09(b). Listing 13.10 denotes disabling breast cancer. *Id.* § 13.10. It therefore appears that the wrong code was entered as the applicable medical Listing at the time of Plaintiff's previous disability determination, despite an acknowledgement of her primary diagnosis of "Malignant Neoplasm of Breast." (Tr. 34.)

[7] *See e.g., Hahl v. Colvin*, No. CIV–12–791–M, 2013 WL 3326178, *7 (W.D. Okla. June 28, 2013) ("ALJ Stults—the second ALJ—found that Plaintiff's impairments did not meet or equal listed severity after October 5, 2006. . . . Plaintiff does not challenge these findings . . . for this 'second' period of disability. By determining that Plaintiff's impairments . . . did not meet listed severity after that date, ALJ Stults obviously found a decrease in the medical severity of Plaintiff's mental impairments and, under the regulations, that medical improvement had occurred. Under these same regulations, the medical impairment that occurred is deemed related to Plaintiff's ability to work.") (citations omitted); *Evans v. Astrue*, No. 4:08–cv–66, 2010 WL 276119, at *8 (E.D. Tenn. Jan. 15, 2010) ("[T]he ALJ properly found that medical improvement occurred as of February 29, 2004, because Plaintiff's impairments no longer met or equaled section 13.02(B) of the Listing of Impairments. As the ALJ noted, the medical evidence showed that Plaintiff no longer had a recurrence of cancer since she underwent surgery in December 1999. The medical expert also reviewed the entire record and concluded that Plaintiff's impairments were not of listing-level severity. Since Plaintiff's impairments were no longer of listing-level severity, the ALJ properly found Plaintiff's medical improvement was related to her ability to do work.") (citation omitted).

and mood and anxiety disorders. (Tr. 23.) In calculating Plaintiff's RFC, the ALJ, in pertinent part, limited her to simple, routine, repetitive tasks at a low production pace, and low stress environment. (*Id.* at 28.) At the hearing, in his hypothetical to the VE, the ALJ consequently limited Plaintiff to performing "simple, routine, repetitive jobs of a low-stress, non-production nature." (*Id.* at 442.) Based on VE testimony, the ALJ concluded that despite these limitations Plaintiff can work in "representative occupations such as a sedentary and unskilled surveillance monitor." (*Id.* at 32.) This job requires a reasoning level of three. *See* Surveillance System Monitor, DOT No. 379.367-010, 1991 WL 673244.[8] Plaintiff now argues that the ALJ erred because a limitation to simple, routine, repetitive tasks at a low production pace and low stress environment is inconsistent with performance of this position. (Docket Entry 9 at 2-6.)[9]

---

[8] Although the ALJ did not mention this, the VE also stated that an individual with Plaintiff's limitations could perform the work of a mail clerk. (Tr. 441-42.) This work also requires a reasoning level of three. Mail Clerk, DOT § 209.687-026, 1991 WL 671813.

[9] The DOT defines six reasoning levels which ascend in increasing levels of complexity. For example, the DOT has defined the first four reasoning levels as follows:

> 04 Level Reasoning Development
> Apply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists. Interpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form. . . . .
>
> 03 Level Reasoning Development
> *Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.*
>
> 02 Level Reasoning Development
> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving

19

Plaintiff consequently contends that:

> According to the DOT, reasoning level "1" jobs can be performed by an individual who can understand and carry out simple instructions and level "2" jobs can be performed by an individual who can understand and carry out "detailed but uninvolved written or oral instructions." Thus, jobs at a reasoning level of "3," as was identified by the VE[,] entail even more complex abilities than performing detailed instructions, and certainly could not be performed by the claimant, who, per the ALJ, has limitations "which limits her to simple, routine, repetitive tasks."

(Docket Entry 9 at 4.)

In support of this contention, Plaintiff points to SSR 00-4p, which provides that:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency. . . .
>
> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:

---

a few concrete variables in or from standardized situations.

01 Level Reasoning Development
Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

DOT, Appendix C *available at* http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM (emphasis added) (hereafter "DOT, Appendix C.")

> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
>
> If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.
>
> When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

SSR 00-4p, *Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions.*

The threshold question here becomes whether Plaintiff's RFC limitation to simple, routine, repetitive tasks at a low production pace and low stress environment necessarily conflicts with a reasoning level of three. The Fourth Circuit Court of Appeals has not specifically addressed in a published decision the correlation between the DOT reasoning levels and an RFC limiting a claimant to simple, routine, repetitive work. The Circuit courts that have addressed the issue have split[10] as have many district courts—including district

---

[10] *Compare Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (finding apparent conflict between job requiring reasoning level three and claimant's limitation to simple and routine work tasks) *with Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (finding no conflict between job requiring reasoning level of three and claimant's limitation to simple work) and *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (finding no apparent conflict between job requiring reasoning level three and claimant's inability to do complex technical work). Although the Ninth Circuit Court of Appeals has not definitively addressed the issue, the majority of district courts within the Ninth Circuit have concluded that there is a conflict between a limitation to simple, routine, repetitive

courts in the Fourth Circuit.[11]    In a previous case, the undersigned concluded that a

limitation to simple, routine, repetitive tasks is consistent with a reasoning of level two, but

left open the issue of whether a reasoning level of three was consistent with such a

limitation. *Green v. Colvin*, No. 1:10CV561, 2013 WL 3206114, *8-9 (M.D.N.C. June 24,

2013) *adopted by* 2013 WL 4811705 (M.D.N.C. Sep 09, 2013).  Soon thereafter, however, the

undersigned was confronted by the issue raised in this case and concluded that there was an

apparent conflict between a limitation to simple, routine, repetitive jobs and jobs requiring a

---

work and level three reasoning. *See Espinoza v. Astrue*, No. 5:12–cv–00544–OP, 2013 WL 327889, at
*3 (C.D. Cal. Jan. 29, 2013) (unpublished) (recognizing that the Ninth Circuit has not addressed the
issue directly, but "the weight of authority in this Circuit holds that a limitation to simple, repetitive
or routine tasks is incompatible with a reasoning level of 3") (collecting cases).

[11] *Compare Williams v. Astrue*, Civil No. 3:11CV592–MOC–DSC, 2012 WL 4756066, *5 (W.D.N.C.
Aug. 27, 2012) (unpublished) ("Because the ALJ limited Plaintiff to unskilled work, and the VE
suggested jobs with a reasoning development level of three, there was no conflict between the
VE's testimony and the DOT."); *Thacker v. Astrue*, No. 3:11CV246–GCM–DSC, 2011 WL
7154218, at *4 (W.D.N.C. Nov. 28, 2011) (unpublished) ("The requirements of GED reasoning
level three are consistent with a limitation to simple, unskilled work. Jobs classified at reasoning level
three require the worker to '[a]pply commonsense understanding to carry out instructions . . . .'
Thus, reasoning level three is very similar to reasoning levels one and two.") (unpublished) (citation
omitted) *with Graham-Willis v. Colvin*, No. 1:12–cv–02489–JMC, 2013 WL 6840465, *7 (D.S.C. Dec.
27, 2013) ("In the District of South Carolina . . . the court has repeatedly found that a limitation to
simple or routine tasks conflicts with jobs requiring a GED reasoning level of three and that such a
conflict must be addressed and resolved by the ALJ.") (collecting cases); *Lee v. Colvin*, No. 1:12CV–
00161–HBB, 2013 WL 1878888, *9-10 (W.D. Ky. May 3, 2013) (unpublished) (concluding that "the
case will be remanded to allow the Commissioner to address the apparent conflict between
Plaintiff's inability to perform more than simple instructions and the level 3 reasoning required by
the surveillance system monitor job identified by the vocational expert"); *Lane v. Astrue*, No. 2:11
cv6, 2012 WL 1032705, at *5 (W.D.N.C. March 9, 2012) (unpublished) ("Because the ALJ did not
inquire on the record as to whether the vocational evidence was consistent with the DOT and did
not obtain any explanation for the apparent conflict between the ALJ's assessment that Plaintiff was
limited to simple work involving one or two step tasks and instructions and the vocational expert's
testimony that Plaintiff could perform jobs with a reasoning level of three, the ALJ erred by relying
on the testimony."); *Yurek v. Astrue*, No. 5:08cv500–FL, 2009 WL 2848859, at *8–9 (E.D.N.C. Sept.
2, 2009) (unpublished) (remand required where the ALJ fails to obtain explanation for an apparent
conflict between the vocational expert's testimony that a claimant could perform a job that the DOT
classified as reasoning level three when the ALJ limited the claimant to simple and repetitive tasks).

GED reasoning level of three and that such a conflict must be addressed and resolved by the ALJ. *See Weaver v. Colvin*, C/A No. 1:10CV582, 2013 WL 3989561 (M.D.N.C. Aug. 2, 2013) *adopted by* 2013 WL 4768178 (M.D.N.C. Sep 05, 2013).

The undersigned has considered the issue anew, yet finds no reason to deviate from his prior reasoning. More specifically, having carefully considered the issue, the undersigned is persuaded by the reasoning underlying those cases holding that there is an apparent conflict between jobs requiring a reasoning level of three and a claimant's limitation to simple, routine, repetitive jobs. *See, e.g., Hackett*, 395 F.3d at 1176 (concluding that "level-two reasoning appears more consistent with Plaintiff's RFC [for simple and routine work tasks]"); *Tudino v. Barnhart*, No. 06-CV-2487-BEN (JMA), 2008 WL 4161443, at * 11 (S.D. Cal. Sept. 5, 2008) ("Level-two reasoning appears to be the breaking point for those individuals limited to performing only simple repetitive tasks."). Remand is thus proper.

Also, here, the ALJ did not ask the VE whether her opinion conflicted with the DOT description of the jobs she suggested. Further, the ALJ did not address the issue of the conflict in her decision. Instead, the ALJ found "[p]ursuant to SSR 00–4p, the vocational expert's testimony is consistent with the information contained in the *Dictionary of Occupational Titles*" (Tr. 32.) There appears to be no factual basis for this finding and it does not comport with applicable law because the ALJ failed to inquire about a conflict between the VE's opinion and the DOT. The ALJ's omission is not harmless because an unexplained apparent conflict exists. Following S.S.R. 00–4p, and the above-cited cases concluding that level three reasoning is inconsistent with a limitation to simple, routine,

repetitive tasks, the undersigned concludes that remand to the ALJ is appropriate to address this apparent unresolved conflict between the jobs identified by the VE and the DOT's classification of these jobs. It should be noted, however, that none of this necessarily means that Plaintiff is disabled under the Act and the undersigned expresses no opinion on that matter. Nevertheless, in light of all of the above, the undersigned concludes that the proper course here is to remand this matter for further administrative proceedings.

## VI. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is not supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that the Commissioner's decision finding no disability be **REVERSED**, and the matter be **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for further administrative action as set out above. To this extent, Plaintiff's Motion for a Judgment Reversing or Modifying the Decision of The Commissioner of Social Security, or Remanding the Cause for a Rehearing (Docket Entry 8) should be **GRANTED** and Defendant's Motion for Judgment on the Pleadings (Docket Entry 11) be **DENIED**.

Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
February 11, 2014